**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| BETSEY TOWNSEND,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[1]<br><br>　　　　Defendant. | Case No. EDCV 19-0393-AS<br><br>**MEMORANDUM OPINION** |

**PROCEEDINGS**

On March 1, 2019, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act. (Dkt. No. 1). On July 30, 2019, Defendant filed an Answer and the Administrative Record ("AR"). (Dkt. Nos. 15-16). The parties have consented to proceed before a United States

---

[1] Andrew M. Saul, Commissioner of Social Security, is substituted for his predecessor. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Magistrate Judge. (Dkt. Nos. 11-12, 21). On November 22, 2019, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Dkt. No. 19).[2] The Court has taken this matter under submission without oral argument. See C.D. Cal. C. R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On December 12, 2014, Plaintiff, previously employed as a store cashier, filed an application for SSI alleging a disability onset date of April 1, 2010. (See AR 75-76, 195, 215-16). Plaintiff's application was denied initially on July 23, 2015, (AR 95), and on reconsideration on October 9, 2015. (AR 102).

On December 14, 2017, Administrative Law Judge Sharilyn Hopson ("ALJ") heard testimony from Plaintiff, who was represented by counsel, and vocational expert ("VE") David Rinehart. (See AR 38-54). On January 25, 2018, the ALJ issued a decision denying Plaintiff's application. (See AR 24-33).

The ALJ applied the requisite five-step process to evaluate Plaintiff's case. (AR 26-33). At step one, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since December 12, 2014, the application date. (AR 26). At step two, the ALJ found that Plaintiff has the following severe

---

[2] The case was reassigned to the undersigned on April 2, 2020. (Dkt. No. 20).

impairments: degenerative disc disease, peripheral neuropathy, arthritis of left hip, right shoulder pain, affective disorder, and anxiety disorder. (AR 26). At step three, the ALJ determined that Plaintiff's impairments do not meet or equal a listing found in 20 C.F.R Part 404, Subpart P, Appendix 1. (AR 27). Next, the ALJ found that Plaintiff has the Residual Functional Capacity ("RFC")[3] to perform "a range of medium work as defined in 20 CFR 416.967(c) and SSR 83-10," with the following limitation:

> [Plaintiff can] lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday; she can sit for six hours out of an eight-hour workday; she can occasionally climb, stoop, kneel, and crouch; she can do occasional overhead reaching on the right; she is limited to tasks with a reasoning level of 2 or less; there should be no public interaction and only occasional interaction with supervisors and coworkers; and she is precluded from jobs requiring teamwork.

(AR 28).

At step four, the ALJ noted that Plaintiff has no past relevant work. (AR 32). At step five, based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ

---

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R §§ 404.1545(a)(1), 416.945(a)(1).

determined that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including laundry worker, industrial cleaner, and floor waxer. (AR 32-33). Accordingly, the ALJ concluded that Plaintiff is not disabled. (AR 33).

On January 7, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (See AR 1-3). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

Plaintiff contends that the ALJ failed to properly consider Plaintiff's testimony regarding her hand pain and limitations. (See Joint Stip. at 4-11, 19-21). After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[4]

**A.   Legal Standard for Assessing Claimant's Subjective Statements**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Id. (citing Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce

---

[4] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Id. (citation omitted); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3. SSR 16-3p eliminated the term "credibility" from the Agency's sub-regulatory policy. However, the Ninth Circuit Court of Appeals has noted that SSR 16-

3p "makes clear what [the Ninth Circuit's] precedent already required":

> that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p) (alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord

Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain;" citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**B.   Plaintiff's Subjective Statements and Testimony**

In her SSI application, Plaintiff alleged that she was unable to work due to "three herniated disc[s]," post-traumatic stress disorder (PTSD), depression, anxiety, and high blood pressure. (AR 198). On a function report dated March 3, 2015, Plaintiff wrote that her conditions limited her ability to work because her anxiety

made it hard to leave the house, and the herniated discs in her neck caused "an extreme amount of pain, when sitting for any length of time or walking." (AR 220). She wrote that on some days she could not put on a bra or shirt due to the pain, she had "a very hard time" raising her hands over her head, and she needed help washing her hair due to numbness in her arms. (AR 221). Plaintiff reported that she did "basic household chores when able," such as laundry, dishes, and some house cleaning. (AR 221). She prepared meals two or three times a week, but she was limited because standing for extended periods caused numbness, she lacked dexterity in her hands, and was apt to "drop anything with any weight to it." (AR 222, 227). Plaintiff also did laundry once or twice a week, if someone carried the basket for her. (AR 222). She could do general cleaning, load the dishwasher, and dust. (AR 227). She did gardening and yard work, and was sometimes able to mow if someone helped to empty the grass catcher, but weeding was "next to impossible" because using her hands to "pull small things" caused cramping and numbness. (AR 224, 227). Plaintiff also fed the cats and the dog, and tried to walk the dog twice a week. (AR 221). She indicated that she could shop for groceries and basic household items. (AR 223).

Plaintiff reported that she was able to lift only five or ten pounds. (AR 226). On some days, she could walk for about a quarter of a mile before needing rest, but she could walk almost a mile on good days. (AR 228). She stated that she could sit for half an hour to an hour before needing "to get up and move around due to

pain in neck [and] lower back." (AR 228). She could write for about a half hour before her hands started cramping up. (AR 228).

At the hearing, on December 14, 2017, Plaintiff testified that she lives with her husband and twenty-four year old daughter. (AR 44). Plaintiff stated that she "assist[s] [her] daughter in a[n] at-home baking business." (AR 41). She stated that she started doing this "about eight months ago," primarily because she "wasn't able to find work outside the home," due to issues with her back and neck, along with the fact that she was "missing about 90 percent of [her] teeth," which was a "real issue" for employers. (AR 42). Plaintiff also explained that she started the work at home because her husband was diagnosed with Alzheimer's, and had "started wandering," so Plaintiff "had to pretty much stay home to watch him." (AR 42-43). Plaintiff further explained that her husband is "permanently disabled at this point," due to a recent car accident," so it is "convenient" for Plaintiff "to be there for him and to help her [daughter]." (AR 43).

Plaintiff explained that the baking business entails making "cakes, wedding cakes, and items along those lines," and that she "primarily do[es] all the baking for her [daughter]," while her daughter "does all of the decorating." (AR 42). She sits on a stool while she is "working, doing the baking," which involves "mix[ing] the mix, throw[ing] it in a pan and put[ting] it in the oven." (AR 43). Her daughter "comes and pulls the pans out" because Plaintiff "can't lift them." (AR 43). When asked how much she makes, Plaintiff responded, "If she makes $600 a month, she's

10

doing good," apparently referring to her daughter's business. (AR 42).

Plaintiff testified that she drives, when not taking her medications for pain and anxiety, but can only drive on "surface streets," because highway driving gives her "real bad panic attacks." (AR 44-45). She stated that her husband drove her to the hearing. (AR 45).

Plaintiff testified that she experiences pain in her upper neck, which has progressively worsened since a car accident the previous October, and it causes both arms and hands to go numb. (AR 47). When she puts on a bra, the straps dig into her shoulders, which "has some effect on the nerve" in her neck, causing both her hands to "go completely numb" and be "useless." (AR 47). She has "good days" and days when her arms and hands are numb, and she and her pain managements doctor were "discussing options on how to resolve that." (AR 47). However, because she was allergic to the medications used in injections, her options were limited to being "put to sleep" and having "nerve burning done in the back of [her] neck," or surgery, which her doctor "doesn't feel is a good idea at this point." (AR 47). Plaintiff was waiting to find out if she "could be a candidate for the nerve burning." (AR 49).

Plaintiff testified that she can lift and carry "[p]robably 10 pounds, if that," though it "depends on the day." (AR 48). For baking, Plaintiff remarked that she cannot lift "a 14 inch pan,"

but "can handle [the] smaller pans and cupcakes," and otherwise, "it varies." (AR 48).

**C.   The ALJ's Credibility Findings**

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." (AR 29).

The ALJ acknowledged that Plaintiff alleges disability due to neck pain, back pain, and numbness in her hands due to neuropathy. (AR 28). The ALJ then noted that Plaintiff "testified at the hearing, however, that she has been working as a baker for her daughter at home," and that she does so apparently in part because she must "provide care for her husband, who is disabled and recently diagnosed with Alzheimer's disease." (AR 28-29).

The ALJ noted that while Plaintiff's "physical examinations in 2014 indicated tenderness to palpation of the cervical spine region, decreased range of motion of the neck, and positive cervical facet loading," her neurological findings "were generally normal." (AR 29) (citing AR 311, 316, 321). The ALJ remarked that later treatment records "indicate intact neurological findings." (AR 29) (citing AR 342, 347, 352-53, 357-58).

The ALJ noted that the examination by orthopedic consultant, Dr. Elzik, revealed "tenderness of the midline and paraspinal musculature of the neck" and limited range of motion of the thoracolumbar spine, but negative straight leg raising bilaterally in the sitting and supine positions. (AR 29; see AR 393). Dr. Elzik's examination also showed Plaintiff's active range of motion of the right upper extremity was restricted at the shoulder joint at 90 degrees, but her range of motion was "better at 120 degrees with passive movement." (AR 29; see AR 393-94). Plaintiff's "neurological evaluation was also unremarkable for weakness or sensory disturbances." (AR 29; see AR 395). Dr. Elzik opined that Plaintiff "could perform a range of medium work with occasional postural activities," with a limitation to occasional overhead reaching with the right upper extremity. (AR 30; see AR 396-97).

The ALJ observed that Plaintiff's treatment records "in the latter part of 2015 continue[d] to reveal intact neurologic functioning and gait despite limited range of motion of the right shoulder, and tenderness to palpation of that joint and the bilateral hips." (AR 30) (citing AR 406, 409-10). The ALJ also noted that treatment records in 2017 showed "tenderness to palpation of the lumbar and bilateral sacroiliac region, [and] positive lumbar facet loading," but cervical spine and right upper extremity findings "remained unchanged," and "neurological findings were also unremarkable." (AR 30) (citing AR 596, 600-01, 605, 717).

The ALJ found that Dr. Elzik's opinion was "consistent with the generally benign examination findings documented by [Plaintiff's] pain management specialist, as well as [Plaintiff's] recent work history as described at the hearing." (AR 31). The ALJ thus gave Dr. Elzik's opinion the "greatest weight" among the medical opinions. (AR 31). The ALJ found that the consultative examiners' opined restriction to light work was "overly restrictive in light of the lack of any significant diagnostic workups such as MRI studies for the neck, back or shoulder." (AR 31). The ALJ noted there was also "no indication that [Plaintiff] has required EMG studies for her complaints of upper extremity numbness." (AR 31). In addition, the ALJ remarked that Plaintiff has undergone "a stable course of conservative pain management without surgical intervention." (AR 31). The ALJ found, moreover, that Plaintiff's "capacity to work as a baker suggest[s] a higher level of physical functioning" that is "more in line" with a range of medium work. (AR 31). The ALJ thus assessed an RFC for medium work, with an ability to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, with occasional overhead reaching on the right, among other restrictions. (AR 28).

D. **Analysis**

As set forth below, the ALJ's evaluation of Plaintiff's subjective statements and testimony regarding hand pain and limitations was supported by specific, clear and convincing reasons backed by substantial evidence in the record. Plaintiff has failed to identify any material error in the ALJ's assessment.

14

First, the ALJ appropriately considered Plaintiff's baking activities to find that her "capacity to work as a baker suggests a higher level of physical functioning" consistent with an ability to perform the range of medium work set forth in the RFC. (AR 31). Plaintiff disputes this finding, contending that she "does not work as baker," but instead simply "helps her daughter with her at-home baking business."[5] (Joint Stip. at 6) (citing AR 41). However, Plaintiff fails to demonstrate any material difference in this characterization; she testified at the hearing that she "primarily do[es] all the baking" for her daughter's baking business, which entails "mix[ing] the mix, throw[ing] it in a pan and put[ting] it in the oven." (AR 42-43). The ALJ accurately characterized this as "work[ing] as a baker," and reasonably found that it suggested "a higher level of physical functioning" than Plaintiff claimed. See Ghanim, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting"; "Even where those activities suggest some

---

[5] Plaintiff also disputes the ALJ's suggestion that Plaintiff earns about $600 a month from baking, (Joint Stip. at 6; citing AR 26), pointing out that her hearing testimony instead indicates that her daughter's business makes about $600 a month, on a good month. (AR 42). However, even if the ALJ mischaracterized Plaintiff's earnings, any error is harmless because the ALJ noted this income at step one, and still found that the work did not amount to substantial gainful activity. (AR 26). There is no indication that the ALJ considered these earnings in the RFC finding or at steps four or five.

15

difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Plaintiff also takes issue with the ALJ's statement that Plaintiff started helping her daughter bake because "she was unable to find work outside the home and because she must provide care for her husband, who is disabled and recently diagnosed with Alzheimer's disease." (Joint Stip. at 7) (quoting AR 29). Plaintiff points out that she testified she could not find work partly because of her back and neck issues, and contends that this "is a valid reason to receive benefits." (Joint Stip. at 7) (citing AR 42). She also contends that caring for her husband is not a basis to discount her complaints, the nature and extent of her care for her husband "remains undeveloped" in the record, aside from her testimony that she needed to "stay home to watch him" because he had "started wandering," due to Alzheimer's. (Id.) (citing AR 42). Regardless, the ALJ's statement accurately reflects Plaintiff's testimony. (See AR 42-43). Plaintiff's professed inability to find work to accommodate her limitations does not undermine the ALJ's findings regarding the extent of those limitations and the availability of jobs in the national economy to accommodate them. Moreover, the ALJ did not suggest that Plaintiff provides physical assistance to her husband, or that such assistance is a basis to discredit her complaints.

Plaintiff asserts that treatment notes consistently report that she suffers neck pain that radiates bilaterally to her hands,

16

and that using her hands/upper extremities worsens the pain. (See Joint Stip. at 8-9). However, the ALJ correctly observed that Plaintiff's neurological findings in the record were largely normal, (see AR 26, 29-31; see, e.g., AR 342, 358, 363, 367, 395-96, 415, 457-67, 535, 542, 592, 605, 621, 708, 721, 740, 756, 780, 801), and appropriately considered these normal findings, among other evidence in the record, to discount the severity of Plaintiff's alleged hand pain and limitations. See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); SSR 16-3p, *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

While Plaintiff acknowledges these normal neurological examinations, she contends that her cervical spine examinations were generally abnormal, documenting "positive bilateral cervical facet loading and tenderness to palpation over the bilateral cervical facets throughout 2014, 2015, 2016, and 2017." (Joint Stip. at 8). However, the medical record also reflects largely normal findings in other respects. For example, examinations from 2016 and 2017 showed mild to moderate tenderness, but intact strength and sensation and negative straight leg raising, among other findings. (See AR 630-32, 635-37, 641-43). Similarly, Dr.

Elzik's one-time orthopedic examination on June 6, 2015, revealed negative straight leg raising bilaterally in the sitting and supine positions, full (5/5) strength and intact sensation in the upper and lower extremities, and full pain-free range of motion in the left upper extremity. (AR 393-95). The right upper extremity generally had full pain-free range of motion, as well, with the exception of the right shoulder, which showed some restricted range of motion in the active range (90 degrees), but was "better at 120 degrees with passive movement." (AR 29, 393-94). The ALJ accounted for this latter finding by limiting Plaintiff to only occasional overhead reaching on the right. (AR 28).

Plaintiff also disputes the ALJ's reliance on the lack of any EMG studies and "significant diagnostic workups such as MRI studies for the neck, back or shoulder." (Joint Stip. at 10) (quoting AR 31). Plaintiff contends that there is "no evidence that an EMG was available" to her, and the ALJ cannot "us[e] the physician's choice of treatment to discredit [her] testimony." (Id.). She also contends that the ALJ "failed to reference" a cervical and lumbar MRI from November 23, 2016. (Id.) (citing AR 637–38). The MRI documented mild findings that prompted a diagnosis of cervical and lumbar radiculopathy. (AR 638). However, these findings do not demonstrate a need for further restrictions in the upper extremities, or undermine the ALJ's suggestion that, despite Plaintiff's complaints of neck pain and upper extremity numbness, her physicians apparently did not find it necessary to obtain EMG studies or "significant diagnostic workups" focused on Plaintiff's neck, shoulder, and upper back.

18

The ALJ's determination that Plaintiff's treatment involved a "stable course of conservative pain medication without surgical intervention," (AR 31), was supported by the substantial evidence in the record. While Plaintiff does not dispute that her treatment "was arguably conservative, and did not require surgical intervention," she contends that this was not a basis to discount her complaints because the medication sometimes did not help, and her pain persisted. (Joint Stip. at 9-10). However, as Defendant points out, Plaintiff often reported at least "fair" pain control. (AR 702, 730, 735, 747, 751, 759, 767, 775, 783, 795, 800, 805, 809). Notwithstanding Plaintiff's contention that "fair does not mean good" (Joint Stip. at 20), she continued this conservative course of treatment, and whatever symptoms persisted generally do not seem to have caused serious distress or to have significantly disrupted her daily activities. (See, e.g., AR 352, 357, 362, 366, 405, 591, 595, 600, 604, 614, 620, 624, 702, 707, 711, 716, 720, 730, 735, 739, 743, 747, 759, 767, 775, 779, 783, 796, 801, 805, 809). Moreover, Plaintiff's symptoms also do not appear to have prevented Plaintiff from regularly engaging in baking activities for her daughter's business – including mixing and pouring batter and "put[ting] it in the oven" (see AR 43) - along with performing other activities requiring a certain degree of manipulation, such as driving and yard work (see AR 221, 224, 227, 44-45). Thus, the ALJ reasonably considered Plaintiff's conservative treatment with pain medication as a basis, among other factors, to discount Plaintiff's subjective complaints. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that

can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Accordingly, the ALJ appropriately discounted Plaintiff's complaints of debilitating hand pain and numbness, due to Plaintiff's ability to work as a baker and engage in other activities, along with her conservative medication treatment, generally normal neurological findings, and other factors.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April 28, 2020

```
                    _____/s/_____
                              ALKA SAGAR
                    UNITED STATES MAGISTRATE JUDGE
```